# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **MY FABRIC DESIGNS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:17-CV-2112-L** |
| | § | |
| **F+W MEDIA, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant F+W Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or Alternative Motion to Transfer Venue (Doc. 4), filed August 17, 2017; and My Fabric Designs, Inc.'s Motion for Leave to File Sur-reply (Doc. 17), filed October 19, 2017. Having considered the motions, legal briefing, pleadings, jurisdictional evidence, record, and applicable law, the court **grants** Defendant F+W Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4); **denies as moot** its Alternative Motion to Transfer Venue (Doc. 4); and **denies** My Fabric Designs, Inc.'s Motion for Leave to File Sur-reply (Doc. 17).

## I. Background Facts and Procedural History

This case arises from an alleged breach of contract by Defendant F+W Media, Inc. ("F+W"). Plaintiff My Fabric Designs, Inc. ("MFD"), a Texas corporation, is a "world leader in the business of developing fabric design and manipulation software, headquartered in Dallas, Texas." Pl.'s Orig. Pet. ("Petition") ¶ 10, attached as Ex. A. to Notice of Removal (Doc. 1-1). F+W, a Delaware corporation with its principal place of business in New York, New York, is a "content and e-commerce company, connecting like-minded individuals and communities to share information and

ideas and to provide access to niche-focused products and programs in crafts, arts, writing, design, outdoors, and lifestyle." Affidavit of John Bolton ¶ 7 ("Bolton Aff.") (Def.'s App. in Supp. of Def.'s Mot. to Dismiss 3) ("Def.'s App.") (Doc. 6). F+W's Crafts Division serves artists and crafters and offers instructions and tools for quilting, sewing, crochet, and other crafting areas. *Id.* ¶ 8. F+W also operates craft-focused community web sites such as www.quiltingdaily.com, www.quiltmaker.com, and others. *Id.* ¶ 9. In addition, F+W sells magazines in stores nationwide, including Texas, and has sponsored a trade show in various cities throughout the country, including in Texas. F+W has offices in New York, Colorado, Iowa, Massachusetts, New Hampshire, Ohio, Pennsylvania, Wisconsin, and in the United Kingdom, and has a retail presence in New Hampshire. *Id.* ¶ 21. F+W has two employees in Texas.[1]

In or around March 2016, Wayne Walker ("Walker"), employed by MFD, approached F+W employee, Kristi Loeffelholz ("Loeffelholz"), regarding a potential business relationship under which

---

[1] In response to Mr. Bolton's affidavit testimony that F+W has no employees in Texas (*see* Bolton Aff. ¶ 19), MFD makes the vague assertion that F+W "appears" to have at least two employees in Texas. Pl.'s Resp. to Mot. to Dismiss 10 (Doc. 13). In support of this averment, MFD has attached printouts from the website "LinkedIn" purporting to show that F+W has two Texas employees, an unnamed "Regional Sales Manager" in "Bryan/College Station, Texas Area" and "Lisa Pace," an author. *See* App. to Pl.'s Resp. 37-38 ("Pl.'s App.") (Doc. 14). In reply, F+W objects to the LinkedIn website printouts as unauthenticated hearsay, lacking proper foundation, and valueless. In addition, Mr. Bolton provides affidavit testimony challenging the assertion that F+W has two employees in Texas. Mr. Bolton testifies that Denise Jacobs, the so-called "Regional Sales Manager," is not and has never been an employee of F+W. She was a subcontracted sales representative from March 2010 to May 2012." Bolton Reply Aff. ¶ 10. He further testifies that Lisa Pace was never an employee of F+W but an independent writer who has written three books published by F+W over the past several decades. *Id.* ¶ 5. Given that MFD has not provided the court with any reason to trust the accuracy of the LinkedIn website pages it cites for the proposition that F+W has two Texas employees, and has failed to make any effort to authenticate the proffered evidence, the court has the authority to sustain F+W's objection. Because the court is not holding an evidentiary hearing on F+W's Rule 12(b)(2) motion, however, the court will assume that F+W has two employees in Texas. For the reasons set out more fully in the analysis portion of this decision, however, even were Ms. Jacobs and Ms. Pace to actually have been F+W employees at the time relevant to this lawsuit, it would not affect the court's ruling.

MFD would develop certain software for F+W's online platforms of the Crafts Division. At the time, Loeffelholz was the General Manager of F+W's Quilt + Sew Community and was based in Des Moines, Iowa. Also in March 2016, Walker e-mailed Loeffelholz about giving her a brief presentation on the software and asked for her address. Walker and Loeffelholz continued to communicate throughout the Summer of 2016, including discussing a draft Software Licensing and Product Fulfillment Agreement (the "SLPF Agreement"), which Walker e-mailed to Loeffelholz in June 2016.

On or about September 13, 2016, after continued communications via telephone and e-mail related to the software and proposed SLPF Agreement, the parties executed a letter of intent ("LOI"), which was signed electronically and circulated by e-mail. Pl.'s App. 20. The LOI, signed by Joe Romello of MFD, stated: "By writing you this letter, it is my intent to outline our business relationship going forward with regard to our work to be performed in anticipation of our [SLPF] Agreement." *Id.* Under the terms of the LOI, MFD agreed to "create, develop and deliver, at is sole cost, a Preliminary Software Module ('PSM') suitable to allow [F+W] to evaluate the software for purposes of determining the suitability of the software to be developed pursuant to the SLPF Agreement." *Id.* The LOI further provided that ten days after its execution, "MFD shall thereafter deliver the PSM to [F+W], who shall then have 14 days (the 'Evaluation Period') to evaluate the PSM for suitability, however, this time period shall be extended by mutual agreement of the parties to accommodate any development issues that may arise during the evaluation period." *Id.* The LOI also stated that within "five days after the end of the Evaluation Period, [F+W] will notify MFD of its intent not to proceed with execution of the SLPF Agreement, or deliver a copy of the Agreement to MFD via email or other electronic transmission." *Id.*

In October and November 2016, Walker and Loeffelholz continued to engage in communications and exchanged drafts of the proposed SLPF Agreement via e-mail. In the Fall of 2016, Loeffelholz traveled to Houston, Texas once to attend a trade show. While in Houston for the show, she met with a MFD representative. In January 2017, Loeffelholz ended her employment with F+W.

The proposed SLPF Agreement explicitly provided that it was only effective "when signed by authorized MFD and F+W representatives." Pl.'s App. 12. Ultimately, the SLPF Agreement was not accepted or signed by F+W. MFD does not challenge that F+W never signed the SLPF Agreement but contends F+W led it to believe the deal would come to fruition. According to Gary Gardner, MFD's President, "at no time after the LOI was signed was there any feedback that F+W and MFD development was not going to fruition." Affidavit of Gary Gardner ("Gardner Aff.") ¶ 7. Mr. Gardner further stated the following under oath:

> If [the relationship] had continued, MFD and F+W would have worked together on a continuing basis as partners. As F+W began to sell MFD custom printed fabrics on site, these sales would have meant that our software would have been constantly updated as F+W continued to change and refine its site, or expand its inventory. And my experience in the software development field has instructed me that this process[] is never done. In addition, as sales continued, we would have to interact with F+W.
>
> In exchange for MFD's work, F+W agreed to commit an advertising budget to promote this joint project of $1,200,000 dollars per year. This advertising would have, and was meant to, directly benefit MFD's sales here in Texas. . . .
>
> After we delivered our software to F+W, we received nothing but positive feedback, and it was clear that the project was successful. And, although we did not receive a signed [SLPF Agreement], employees at F+W who were involved in the project like Kristi Loeffelholz, and others, told us that the project was approved, and that we should continue work.
>
> We relied on these statements, continued work on the project, and reasonably believed F+W agreed to the [SLPF Agreement], and F+W told us, and acted like, this

> was the case. Later, however, we were informed by other F+W employees that F+W had decided to no longer continue the project.

Gardner Aff. ¶¶ 8-11.

On July 12, 2017, MFD filed suit against F+W in the 162nd Judicial District Court of Dallas County, Texas, alleging breach of contract, unjust enrichment, fraud, and detrimental reliance. F+W timely removed the case to this court on August 10, 2017, on the basis of diversity jurisdiction.[2] On August 17, 2017, F+W moved to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, alternatively, to transfer this lawsuit to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## II.    Legal Standard — Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of

---

[2] It is undisputed that MFD is a Texas corporation with its principal place of business in Dallas, Texas, and F+W is a Delaware corporation with its principal place of business in New York, New York. In addition to complete diversity between the parties, it is undisputed that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Pl.'s Orig. Pet., attached as Ex. A-1 to Def.'s Notice of Removal (Doc. 1-1); *see generally* 28 U.S.C. § 1332(a).

discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). After a plaintiff makes a prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (in turn quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* As such, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).

The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros*, 466 U.S. at 414 n.9. Recently, the Supreme Court clarified that courts may exercise general jurisdiction over nonresident defendant corporations when "'their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 754 (2014)) (internal quotation marks omitted). Whether the

defendant corporation is "essentially at home" does not "focus solely on the magnitude of the defendant's in-state contacts." *Id.* at 1559 (quoting *Daimler*, 134 S. Ct. at 762 n.20) (internal quotation marks omitted). Instead, courts must examine the defendant corporation's "activities in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20. When activities in a particular forum are "so substantial and of such a nature as to render the corporation at home in that State" in light of all of the corporation's activities, a court may exercise general jurisdiction. *BNSF Ry.*, 137 S. Ct. at 1558 (quoting *Daimler*, 134 S. Ct. at 761 n.19) (internal quotation marks omitted).

The corporate defendant's place of incorporation and principal place of business are the "paradigm" forums where it is "at home." *Id.* at 1558 (quoting *Daimler*, 134 S. Ct. at 760; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)) (internal quotation marks omitted). Corporate defendants may be at home in additional forums, but such a forum is an "exceptional case." *Id.* (quoting *Daimler*, 134 S. Ct. at 761n.19); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is, therefore, incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.") (citations omitted).

"Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to defendant to show that the assertion of jurisdiction would be unfair." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008) (citation omitted). In evaluating whether the exercise of personal jurisdiction over the defendants would be fair and reasonable, the court must examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared

interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Accordingly, because the court is deciding the motion to dismiss without an evidentiary hearing, the court must decide whether MFD has made a prima facie showing (1) that F+W purposefully directed its activities at residents of the forum, and (2) that this litigation results from alleged injuries that arise out of or relate to F+W's activities directed at the forum.

### III. Analysis

#### A. F+W's Motion to Dismiss under Rule 12(b)(2)

F+W moves to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), arguing that specific and general jurisdiction is lacking. The court first considers whether MFD has met its burden of establishing a prima facie case for specific jurisdiction over F+W. As MFD is bringing multiple claims, it must establish specific jurisdiction for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of

personal jurisdiction for one claim will not provide the basis for another claim.")). The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (quoting *Seiferth*, 472 F.3d at 271). If MFD can successfully establish the first two prongs, then the burden shifts to F+W to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

### 1. Specific Jurisdiction

The court has examined MFD's factual allegations to determine whether the quality, nature, and extent of F+W's activities in Texas, and the relation of those activities to MFD's lawsuit, are sufficient to make a prima facie case that F+W purposefully availed itself of the benefits, privileges, and protections of the laws of Texas to the extent that it could reasonably anticipate being haled into a Texas court. As the court did not hold an evidentiary hearing, it accepts MFD's factual allegations as true. The court first addresses whether MFD has made a prima facie case of specific jurisdiction with respect to its breach of contract claim.

#### a. *MFD's Breach of Contract Claim*

MFD argues that F+W established minimum contacts with Texas through its business dealings with MFD, a Texas corporation, in negotiating and entering into the LOI, and in participatimg in further discussions concerning the proposed SLPF Agreement.[3] According to MFD:

---

[3] The court does not address the merits of the case in deciding whether it has personal jurisdiction over F+W. For purposes of context, the court observes that under Texas law there are four elements for a

> F+W employees negotiated and reviewed the parties' initial letter agreement. After that, F+W employees engaged in numerous calls and correspondence with MFD lasting months for the purpose of building the software module that would facilitate their relationship. This interaction with MFD included at least one personal visit by F+W executives to Texas. And it was these same F+W employees that MFD claims agreed to the deal.

Pl.'s Resp. 9 (internal citations omitted). Further, MFD contends that the "LOI was executed in order to provide the parties with the opportunity to build a lasting commercial endeavor that would depend on each parties' lasting contribution." *Id.* at 7.

With respect to the contract between MFD and F+W, the Fifth Circuit has consistently held that "merely contracting with a resident of a forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted)); *see also Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ("[M]erely contracting with a resident of the forum state does not establish minimum contacts.") (citation omitted). Further, MFD focuses much of its time on its own contacts with Texas, rather than the contacts of F+W. A plaintiff's unilateral activities in the forum state, such as those of MFD in this case developing the PSM under the LOI so that F+W could assess its suitability prior to entering into the proposed SLPF Agreement, cannot establish minimum contacts between the nonresident defendant and the forum state. *See Moncrief Oil*, 481 F.3d at 311 (*citing Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983)).

---

claim of breach of contract: (1) an enforceable valid contract between the parties; (2) performance by plaintiff of its contractual obligation; (3) breach of the contract by the defendant; and (4) injury to plaintiff caused by the breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). The court assumes for purposes of this decision that the LOI was an enforceable valid contract between the parties.

Additionally, communications such as telephone calls and e-mails between the parties in developing or carrying out the contract, upon which MFD relies heavily, do not, by themselves, constitute purposeful availment sufficient to invoke the benefits and protections of the forum state's laws. *Holt Oil,* 801 F.2d at 778; *see also Moncrief Oil,* 481 F.3d at 312 ("An exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law.") (citation omitted). Hence, the communications between Walker and Loeffelholz leading toward the LOI and proposed SLPF Agreement, whether originating in Texas or Iowa or elsewhere, are insufficient to support personal jurisdiction by a Texas court over F+W.

Other factors also reinforce the court's conclusion that F+W's limited contacts are insufficient to support the exercise of personal jurisdiction over F+W by a Texas court. In determining whether a defendant engaged in purposeful activity in the state, courts look to whether the nonresident defendant initiated contract negotiations or solicited the contract. *See, e.g., Burger King*, 471 U.S. at 479. Here, the only evidence is that MFD initiated the contract negotiations. In or around March 2016, Walker, employed by MFD, approached F+W employee, Loeffelholz, regarding a potential business relationship under which MFD would develop certain software for F+W's online platforms of the Crafts Division. Also in March 2016, Walker e-mailed Loeffelholz about giving her a brief presentation on the software and asked for her address.

Additional factors in determining whether a nonresident defendant engaged in purposeful activity in Texas are the place of performance of the contract, the place of contracting, and the law governing the contract. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992); *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 152 (5th Cir. 1980). With

respect to the place of performance of the contract, the LOI was silent. As to the place of contracting, the evidentiary record establishes the negotiations took place over the telephone or via e-mail between Walker, in Texas, and Loeffelholz and other F+W employees located outside Texas. The Fifth Circuit has held that the exchange of communications via telephone and facsimile are "insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state." *Hydrokinetics*, 700 F.2d at 1029 (citations omitted). The LOI did not contain a choice of law or choice of forum clause. As to the proposed SLPF Agreement, any choice of law or choice of forum provision is irrelevant, as it is undisputed that F+W never executed the SLPF Agreement, which on its face states that it is only valid upon signature by F+W and HFD's representatives.

Finally, in *Burger King*, the Court emphasized the need to examine the totality of the circumstances to determine whether a defendant purposefully availed itself of the forum state or merely engaged in contacts that were random, fortuitous, or attenuated in nature. *Burger King*, 471 U.S. at 475. That Loeffelholz traveled to Texas once for a trade show in the Fall of 2016, and while in Texas met with a MFD representative, is an isolated factor in the totality of the facts and insufficient to establish purposeful availment.[4]

---

[4] In *Burger King*, the Supreme Court held that Rudzewicz, a nonresident-defendant franchisee, had purposefully availed himself of the benefits and protection of the laws of Florida, the forum state, by entering into "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." 471 U.S. at 480. The Court stated, "In light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated." *Id.* (citation and internal quotation marks omitted). To the extent MFD creatively attempts to analogize the limited contacts in this case to the level and quality of contacts in *Burger King*, the court rejects this argument. Unlike in the case of *Burger King*, in which the franchise dispute grew directly out of "a contract which had a *substantial* connection with" Florida, *see* 471 U.S. at 479, in this case, MFD's breach of contract claim against F+W grows out of a contract with limited connection to Texas.

In sum, the court determines, after considering the totality of the facts, that MFD has failed to establish a prima facie case of specific jurisdiction over F+W with respect to any of its breach of contract claim. As such, the court need not consider the question of whether the exercise of personal jurisdiction over F+W would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

b.  *MFD's Fraud, Unjust Enrichment, and Detrimental Reliance Claims*

MFD also brings claims of fraud, unjust enrichment, and detrimental reliance based on the LOI and allegations that, after it delivered the software, it was led to believe the deal would come to fruition, notwithstanding that F+W never accepted or signed the SLPF Agreement. As previously stated, the Fifth Circuit has concluded that specific jurisdiction is "a claim specific inquiry." *Seiferth*, 472 F.3d at 271. In this case, MFD makes no attempt to explain why this court has specific jurisdiction over any claims other than its breach of contract claim. For this reason alone, the court concludes that MFD has failed to meet its burden of establishing a prima facie case of specific jurisdiction with respect to its fraud, unjust enrichment, and detrimental reliance claims.

In addition, as MFD's remaining claims are based entirely on the existence of an alleged contract, if jurisdiction could not be predicated upon the LOI and alleged subsequent promises pertaining to the deal without violating due process requirements, it similarly could not be predicated on any alleged statements regarding the deal. *See Goodworth Holdings v. Suh*, 2001 WL 910388, at *4 (N.D. Tex. Aug. 3, 2001) (Lynn, J.) (holding that when an alleged tort claim is predicated entirely on an underlying contract claim, if minimum contacts were insufficient to support specific jurisdiction over the contract claim, they are equally insufficient to support specific jurisdiction over the tort claim).

Alternatively, MFD has failed to specifically respond to F+W's argument that the court lacks specific jurisdiction over it with respect to MFD's fraud, unjust enrichment, and detrimental reliance claims. Therefore, the court deems MFD to have conceded this argument.

**2. General Jurisdiction**

The court also concludes that MFD has similarly failed to meet its burden of showing that F+W's contacts with Texas justify the exercise of general jurisdiction over it. As previously stated, the appropriate consideration in determining whether a forum has general jurisdiction over a foreign corporation is whether the defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *BNSF Ry.*, 137 S. Ct. at 1558 (quoting *Daimler*, 134 S. Ct. at 754). The corporate defendant's place of incorporation and principal place of business are the "paradigm" forums where it is "at home." *Id.* (citations omitted). Corporate defendants may be at home in additional forums, but such a forum is an "exceptional case." *Id.* (quoting *Daimler*, 134 S. Ct. at 761 n.19); *see also Monkton*, 768 F.3d at 432 (noting that under this test it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.") (citations omitted).

MFD argues that the court may exercise general jurisdiction over F+W based on its sale of magazines in Texas, the presence of two employees in Texas, and sponsorship of a trade show in Texas. MFD's brief ignores recent Supreme Court case law on general jurisdiction, discussed above, and MFD fails to argue that this is an "exceptional case" or allege any facts from which the court can reasonably infer that this is an "exceptional case." *See BNSF Ry.*, 137 S. Ct. at 1558 (citation omitted). Further, MFD does not dispute that F+W is incorporated in Delaware and has its principal place of business in New York. Thus, Texas is not the "paradigm forum" for general jurisdiction.

*See id.* (quoting *Daimler*, 134 S. Ct. at 760; *Goodyear*, 564 U.S. at 924). Accordingly, F+W's activities in Texas must present an "exceptional case" for this court to conclude that F+W is at home in Texas. *See id.* (quoting *Daimler*, 134 S. Ct. at 760; *Goodyear*, 564 U.S. at 924).

Based on the record presented, the court concludes that F+W's connections with Texas are not "so 'continuous and systematic' as to render [it] essentially at home" in the forum. *Goodyear*, 564 U.S. at 924 (quoting *Int'l Shoe Co.*, 326 U.S. at 317); *see also BNSF Ry.*, 137 S. Ct. at 1559 (holding that Montana did not have general jurisdiction over a railroad company with "over 2,000 miles of railroad track and more than 2,000 employees in Montana."); *Daimler*, 134 S. Ct. at 751 (holding that there was no general jurisdiction in California over a German corporation that distributed vehicles globally but had multiple California-based facilities); *Helicopteros*, 466 U.S. at 416 (holding that a Texas court could not exercise general personal jurisdiction over a Colombian corporation consistent with due process, even though the corporation had a bank account in New York that accepted checks drawn on a Houston bank, sent its chief executive officer to Texas to negotiate a contract, purchased eighty percent of its helicopter fleet from Texas, and sent personnel to Texas for training).

Accepting as true MFD's allegations, F+W's connections with Texas are limited to F+W's sale of magazines in Texas, what MFD describes as F+W's sponsorship of a trade show in Texas, and two possible employees, *see supra* note 1. These connections are not "so substantial" as to make this one of those "exceptional" cases in which a foreign corporation is "at home" in a forum other than its place of incorporation or principal place of business. *Daimler*, 134 S. Ct. at 761 n.19. If general jurisdiction was not present in *Helicopteros*, *BNSF Ry.*, and *Daimler*, *supra*, cases in which

the nonresident defendant's contacts were decidedly more substantial, continuous, and systematic than the contacts in this case, general jurisdiction is certainly not present in this case.

In short, because F+W is neither incorporated nor has its principal place of business in Texas, and because MFD has not pleaded facts showing that F+W's contacts with Texas are "continuous and systematic" enough to render it "at home" in Texas, general jurisdiction is lacking. *See Daimler*, 134 S. Ct. at 761.

### B. F+W's Alternative Motion to Transfer Venue

In the event the court denies its motion to dismiss for lack of personal jurisdiction, F+W moves the court to transfer of venue to a federal court in New York pursuant to 28 U.S.C. § 1404(a). MFD opposes this relief. In light of the court's decision to grant F+W's motion to dismiss for lack of personal jurisdiction, the court denies as moot F+W's alternative motion to transfer venue.

### C. MFD's Request for Discovery

MFD requests that the court allow it to take jurisdictional discovery for the purpose of establishing jurisdictional facts "[i]n the event F+W disputes the veracity of any fact asserted in [its] response." Pl.'s Resp. 12. For the following reasons, the court denies MFD's request for discovery.

The court has discretion to allow jurisdictional discovery. *Monkton*, 768 F.3d at 434 (citation omitted). As the party opposing dismissal and requesting jurisdictional discovery, the plaintiff bears the burden of showing that discovery is needed. *Id.* When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand" a motion to dismiss for lack of

personal jurisdiction. *Monkton*, 768 F.3d at 434 (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)). "[D]iscovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000) (internal citation and punctuation omitted). "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014) (citation omitted). A court is entitled to deny leave to conduct discovery when the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.*; *see also King v. Hawgwild Air, LLC*, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008) (Lindsay, J.).

Having considered MFD's one-sentence request for discovery, the court determines that its request does not meet the above-stated standard for jurisdictional discovery. First, MFD has not described what facts it expects to discover and how that information would support either specific or general jurisdiction. MFD only vaguely asserts that it would like to take discovery if any of its facts are contested. This is insufficient. Second, notwithstanding F+W's introduction of evidence controverting MFD's assertions that it has two employees in Texas, as well as other contacts with Texas that MFD asserts are sufficient to establish general jurisdiction, the court has construed all evidence in MFD's favor and has still determined that personal jurisdiction is lacking. Further discovery on factual averments the court has already accepted as true for purposes of its analysis of

F+W's Rule 12(b)(2) motion, and found unavailing, would be futile. For these reasons, the court denies MFD's request for discovery.

### D. MFD's Motion for Leave to File Surreply

MFD seeks leave of court to file a surreply, arguing that it should have an opportunity to respond to what it describes as new evidence in F+W's reply, as well as F+W's challenge to statements in Gardner's Affidavit. The court disagrees.

Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. The court has found that surreplies usually are not that helpful in resolving pending matters, and it only permits filings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances. Consequently, a party must not seek leave to file a surreply as a routine matter.

In this case, MFD has failed to demonstrate the need for a surreply or that extraordinary circumstances are present. Further, to the extent F+W presented any new evidence in its reply, the court has not considered it. In addition, the court has viewed all MFD's factual allegations as true, even where controverted. Finally, the court has considered the proposed surreply and concludes that it merely repeats prior arguments and is of little utility to the court. Accordingly, the court denies MFD's request for leave to file a surreply.

## IV. Conclusion

For the reasons herein stated, the court **concludes** that MFD has failed to meet its burden of establishing a prima facie case of personal jurisdiction over F+W. Accordingly, the court **grants**

Defendant F+W Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4); **denies as moot** its Alternative Motion to Transfer Venue (Doc. 4); and **denies as moot** MFD's Motion for Leave to File Sur-reply (Doc. 17).  Although the court has granted the motion to dismiss for lack of personal jurisdiction, rather than dismiss this action without prejudice, the court, in the interest of justice, **transfers** this action to the Southern District of New York pursuant to 28 U.S.C. §§ 1631 and 112(b).  The Southern District of New York is a court in which this action could have been brought when it was initially filed.  The court **directs** the clerk of court to effect this transfer in accordance with the usual practice.

**It is so ordered** this 2nd day of March, 2018.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge